UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY MARGARET CARROLL,

                       Plaintiff,

     v.                                        **DECISION AND ORDER**
                                                       15-CV-189S

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

                       Defendant.

1.      Plaintiff Mary Margaret Carroll challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since June 1, 2009, due to rheumatoid arthritis, cervical spine impairment, and lumbar spine impairment. She therefore asserts that she is entitled to payment of disability benefits under the Act.

2.      Plaintiff filed an application for disability insurance benefits on May 29, 2012, which the Commissioner denied on August 15, 2012. On September 18, 2012, Plaintiff requested a hearing before an ALJ. ALJ Grenville W. Harrop, Jr. then held a hearing on November 5, 2013, at which Plaintiff appeared with counsel and testified. At the time of the hearing, Plaintiff was 51 years old, with a high school education and previous work experience as a bank teller. The ALJ considered the case *de novo*, and on January 29, 2014, issued a written decision denying Plaintiff's application for benefits. The Appeals Council denied Plaintiff's request for review on January 14, 2015. Plaintiff filed the current action on March 2, 2015, challenging the Commissioner's final decision.[1]

---

[1] The ALJ's January 29, 2014 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

3. On July 31, 2015, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 4.) On October 29, 2015, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 10.) For the reasons stated below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.  Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.  In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since June 1, 2009, the alleged onset date (R. at 38);[2] (2) Plaintiff's rheumatoid arthritis is a "severe" impairment within the meaning of the Act (R. at 38); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 38); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work with a stand/sit option as defined in 20 C.F.R 404.1567(b) (R. at 39); and (5) Plaintiff is able to perform her past relevant work as a bank teller (R. at 41). Ultimately, the ALJ determined that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 42-43.)

---

[2] Citations to the underlying administrative record are designated as "R."

Thus, Plaintiff was not under a disability as defined by the Act at any time from June 1, 2009, through the date of the ALJ's decision. (R. at 43.)

10. Plaintiff raises two challenges to the ALJ's decision. First, she contends that the ALJ failed to properly apply the treating-physician rule. Second, she argues that the ALJ failed to properly evaluate her credibility. Each argument is discussed in turn.

11. The long-standing treating-physician rule governs consideration given to the medical opinions of a claimant's treating physician relative to other medical evidence presented at a claimant's disability hearing. "The 'treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians." Murdaugh v. Sec'y Dep't of Health and Human Servs., 837 F.2d 99,101 (2d Cir. 1988) (quoting Schisler v. Heckler, 787 F.2d 76, 61 (2d Cir. 1986)).

12. It is thus well established that a treating physician's opinion as to the nature and severity of an impairment is generally entitled to controlling weight. Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam). But a treating physician's opinion is not entitled to controlling weight if it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record. Id. Nonetheless, even when such opinion is not given controlling weight, an ALJ must consider several factors in determining how much weight to afford the opinion. Id. The ALJ must explicitly consider: (1) the frequency, length, nature, and extent of treatment; (2) the

amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. Id.

13. Plaintiff's treating rheumatologist is Mary Margaret O'Neill, M.D. (R. at 40.) She first diagnosed Plaintiff with seropositive rheumatoid arthritis in April 1998. (R. at 256.) Between that time and September 2012, O'Neill treated Plaintiff with a variety of medications, but most consistently, with Remicade injections every 12 weeks beginning in November 2008. (R. at 256, 326.) O'Neill saw Plaintiff every three months thereafter, as detailed by the progress notes in the record. (R. at 367.) In February 2012, Plaintiff began reporting increased pain to O'Neill. (R. at 228.) Plaintiff's complaints of increased pain continued through July 2013, when she reported a pain level of seven out of 10. (R. at 370.)

14. In August 2012, O'Neill completed a rheumatoid arthritis impairment questionnaire based on an examination from July 9, 2012. (R. at 257-263.) Therein, she noted reduced range of motion in cervical spine, reduced grip strength in both hands, and tenderness. (R. at 258.) Based on the severity of the joint pain—mostly in Plaintiff's neck and hands, which O'Neill recorded as a three out of 10—O'Neill opined that Plaintiff had the following limitations in an 8-hour workday: sit for four hours; stand/walk for two hours; not sit or stand/walk continuously; move around every two hours for at least 15 minutes; not lift more than 20 pounds; avoid wetness; and not push, pull, kneel, bend, or stoop. (R. at 259-62.) O'Neill reiterated this opinion one year later. (R. at 367.)

15. The ALJ gave little weight to O'Neill's opinion. (R. at 41.) Aside from the lifting and movement limitations, the ALJ found that O'Neill's opinion concerning other limitations was not supported by the objective medical evidence. (R. at 41.) In particular,

he found no evidence that Plaintiff had difficulty pushing, pulling, kneeling, bending, sitting, walking, standing, or stooping. (R. at 41.) The ALJ also found these limitations inconsistent with Plaintiff's daily activities and her own reports of pain throughout her treatment. (R. at 41.)

16. In doing so, this Court finds that the ALJ properly considered the length and nature of O'Neill's treating relationship with Plaintiff (R. at 40), the medical evidence supporting the opinion (R. at 40-41), the consistency of the opinion with the other medical evidence of record (R. at 40-41), and her position as a rheumatologist (R. at 40.) He explained why he found O'Neill's opinions inconsistent with the findings and opinions of Samuel Balderman, M.D., the consultative examiner, and Michael Peril, the reviewing physician, whose opinions are consistent with O'Neill's progress notes (but not her ultimate opinions), the bulk of which show that Plaintiff's pain was well managed and that she had only the limitations identified by the ALJ. (R. at 40-41.) For example, in the rheumatoid arthritis impairment questionnaire on which O'Neill's opinions are largely based, Plaintiff reported her pain to be only three out of 10 (mild) and told O'Neill that she did not want to increase her dosage of medication, an indication that she was feeling well. (R. at 260.) The ALJ therefore reasonably discounted O'Neill's opinions for lack of supporting evidence and properly explained his basis for doing so, most notably because O'Neill's opinions were inconsistent with her treatment records, which fail to show a need to avoid wetness, or to support a finding that Plaintiff cannot push, pull, kneel, bend, or stoop.

17. The ALJ also found that O'Neill's opinion was inconsistent with Plaintiff's daily activities. Plaintiff cared full-time for her young grandson, five days per week from 7am-3pm beginning, at the latest in February 2012. (R. at 228.) She also drove, attended

church, cooked, cleaned a four bedroom, multi-story house, shopped, exercised, swam, and did laundry. (R. at 40, 41, 59, 60, 61.) In this Court's view, the ALJ quite reasonably found that these activities were not only inconsistent with O'Neill's opinion concerning Plaintiff's limitations, but also with Plaintiff's claims of suffering severe pain and loss of function. (R. at 40-41.) Accordingly, this Court finds that the ALJ properly applied the treating-physician rule.

18.    Plaintiff next argues that the ALJ failed to properly evaluate her credibility. Credibility determination are generally reserved to the Commissioner, not the reviewing court. Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982) (similar). The ALJ is required to set forth the essential considerations upon which his or her decision is based, with sufficient particularity to enable the reviewing court to decide whether the disability determination was supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he . . . mention[ ] every item of testimony presented to him or . . . explain[ ] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); see also Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) (holding that the court was unwilling to require the ALJ to explicitly reconcile every conflicting shred of evidence provided that he carefully considered the evidence in reaching his decision).

19.     Here, the ALJ considered Plaintiff's subjective complaints, but concluded that her statements concerning "the intensity, persistence and limiting effects of [her] symptoms" were not credible. (R. at 40.) The ALJ explained that Plaintiff's activities of daily living were inconsistent with her claim of total disability, her complaints of pain to O'Neill were few, and Plaintiff did not appear in obvious pain or discomfort during the hearing. (R. at 40.)

20.     Despite Plaintiff's arguments to the contrary, the ALJ's credibility assessment is grounded in the evidence and sufficiently explained. As noted above, Plaintiff's daily activities are inconsistent with total disability and there is no error in the ALJ noting his observations of Plaintiff's physical condition during the hearing, particularly because this was not the only basis for his adverse credibility finding. Moreover, the ALJ accurately relayed that O'Neill's treatment notes reveal that Plaintiff reported either no pain or minimal pain on various visits and that her pain was well managed. (R. at 39-40.) Therefore, this Court finds no error in the ALJ's credibility finding.

21.     After carefully reviewing the administrative record, this Court finds no error in the ALJ's determination. The ALJ's decision affording little weight to Dr. O'Neill's medical opinion is supported by substantial evidence and the ALJ correctly evaluated Plaintiff's credibility based on the totality of the evidence presented in the record. This Court will therefore grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion for the same relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 4) is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:  January 6, 2017
        Buffalo, New York

                                                  /s/William M. Skretny
                                                 WILLIAM M. SKRETNY
                                    United States District Court Judge